FILED'11 MAY 23 09:25USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


Anthony Beasley,                                    Civil No. 09-6256-AA
                                                    OPINION AND ORDER
            Plaintiff,

      vs.

City of Keizer, John Teague, Jeff
Kuhns, Timothy S. Lathrop, John
Troncoso, Lori Evans, and Katie
Suver,

            Defendants.

_____

Brian Michaels
Attorney At Law
259 E. Fifth Ave., Suite 300
Eugene, OR 97401

Marianne Dugan
Attorney At Law
259 E. Fifth Ave., Suite 200-D
Eugene, OR 97401
      Attorneys for plaintiff

Gerald L. Warren
Attorney At Law
901 Capitol St. NE
Salem, OR 97301
      Attorney for defendants City of Keizer,

John Teague, Jeff Kuhns, Timothy Lathrop
and John Troncoso

John R. Kroger
Attorney General,
Shawn M. O'Neil
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301
        Attorneys for defendants Lori Evans and
        Katie Suver

AIKEN, Chief Judge:

        Defendants filed a motion for summary judgment against
plaintiff's Complaint. Defendants' motion is granted.

BACKGROUND

        Plaintiff, Anthony Beasley, asserts that he suffered a series
of constitutional violations pursuant to his Fourth Amendment
rights as well as numerous state tort claims by defendants Keizer
police officers John Teague, Jeff Kuhns, Timothy S. Lathrop, and
John Troncoso (collectively, the "Officers"), defendants Deputy
District Attorneys Lori Evans and Katie Suver, and the City of
Keizer. Plaintiff's federal claims include: (1) false arrest and
imprisonment; (2) illegal search and seizure; and (3) municipal
liability under Monell. Monell v. Dept. of Social Services of the
City of New York, 436 U.S. 658 (1978). Plaintiff's state claims
include: (1) trespass; (2) invasion of privacy; (3) illegal
targeting of medical marijuana holder; (4)intentional infliction of
emotional distress; and (5) interference with a contract.
Defendants move for summary judgment on all of plaintiff's claims.
Page 2 - OPINION AND ORDER

At all times relevant to this action, plaintiff was a lawful marijuana card holder as a patient-grower and as a caregiver-grower for three patients. Plaintiff alleges that the Keizer Police Department was aware that his residence was a designated grow site as a patient under the Oregon Medical Marijuana Act (OMMA). On October 17, 2007, two of plaintiff's former roommates allegedly entered plaintiff's home illegally to collect their belongings. While inside plaintiff's home, one of the individuals observed suspicious devices on plaintiff's coffee table. Fearing these devices were pipe bombs, the individual contacted the Keizer Police Department for assistance. When the Officers arrived on the scene, the front door of the house was open and the suspicious devices were visible from the front porch. The officers contacted the bomb squad to assist in the investigation.

Meanwhile, plaintiff's landlord contacted plaintiff and informed him that the police were investigating an emergency phone call indicating the existence of pipe bombs in plaintiff's home. Plaintiff alleges that the officers would not speak to him until after the investigation was complete; however, plaintiff was eventually able to explain to the officers that the alleged pipe bombs were actually pipes used for manufacturing hash oil.

On October 19, 2007, defendant Officer Timothy S. Lathrop applied for a search warrant of plaintiff's home. The search warrant as well as the affidavit for search warrant identified the manufacture of hash oil as the crime and conduct alleged. Unsure of

Page 3 - OPINION AND ORDER

the legality of hash oil under OMMA and prior to submitting the affidavit for search warrant, Lathrop consulted with defendant Marion County Deputy District Attorney (DDA) Lori Evans. Before responding to Lathrop's inquiry, Evans conferred with defendant DDA Suver on the legality of hash oil under OMMA. Evans and Suver concluded that possession and manufacture of hash oil was illegal under OMMA. Once completed, the search warrant was authorized by Judge Claudia Burton and executed that same day.

On October 19, 2007, plaintiff was arrested at his friend's home pursuant to the execution of the search warrant. The arresting officer informed plaintiff that hash oil was a controlled substance, which was not authorized by OMMA. Thus, the possession and manufacture of hash oil was illegal.

Plaintiff further alleges that several newspaper articles were published regarding plaintiff's arrest, stemming from information received from the Keizer Police Department. As a result, plaintiff was evicted from his home and forced to move several times. Plaintiff alleges he suffered from severe emotional distress resulting in a 120 pound weight gain, night terrors, and other health issues. Plaintiff seeks relief in the form of actual and compensatory damages as well as punitive damages. Plaintiff also requests reasonable attorneys' fees and costs.

Plaintiff has withdrawn his third and fourth claims for relief regarding the illegal targeting of a medical marijuana card holder, and the intentional infliction of emotional distress against all

Page 4 - OPINION AND ORDER

defendants. Thus, these claims are dismissed. Moreover, plaintiff fails to stipulate with any specificity which defendants allegedly deprived plaintiff of his right to be free from illegal search and seizure. As such, I assume plaintiff brings this claim against the individual defendants Kuhns, Lathrop, and Troncoso.

## STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law on an issue determines the materiality of a fact. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of

Page 5 - OPINION AND ORDER

genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  T.W. Electrical, 809 F.2d at 630.

### Federal Claims

## I. Defendants Lori Evans and Katie Suver

Lori Evans and Katie Suver move for summary judgment on plaintiff's section 1983 claims based on absolute and qualified immunity. I find that defendants Lori Evans and Katie Suver are, in fact, entitled to qualified immunity, and therefore, plaintiff's claims against these defendants are dismissed.

A prosecutor is protected by absolute immunity from personal liability under section 1983 "when performing the traditional functions of an advocate." Genzler v. Loganbach, 410 F.3d 630, 636 (9th Cir. 2005) (quoting Kalina v. Fletcher, 522 U.S. 118, 131 (1997)). However, "prosecutors are entitled to qualified immunity...when they perform administrative functions, or investigative functions normally performed by a detective or police officer." Id. (internal quotations omitted). The Ninth Circuit recognizes that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." Id. at 637 (quoting Kalina, 509 U.S. at 274). Thus, whether a prosecutor enjoys absolute or qualified immunity depends primarily on the type of investigative work the prosecutor is performing.

Page 6 - OPINION AND ORDER

> A prosecutor gathering evidence is more likely to be performing a quasi-judicial advocacy function when the prosecutor is organiz[ing], evaluat[ing], and marshal[ing] [that] evidence in preparation for a pending trial, in contrast to the police-like activity of *acquiring* evidence which might be used in prosecution.

Id. at 639 (internal quotations omitted).

In determining whether an official is entitled to qualified immunity against a section 1983 claim, a court must consider two issues. First, a court must decide whether the facts that a plaintiff has alleged or has proven make out a violation of a constitutional right.  If they do not, then the defendant is entitled to qualified immunity.  Second, the court must decide whether the right at issue was clearly established at the time of the government official's alleged misconduct.  If it was not, then the defendant is entitled to qualified immunity.  Pearson v. Callahan, 555 U.S. 223 (2009); Saucier v. Katz, 533 U.S. 194 (2001).  The key inquiry is whether it would be clear to a reasonable government official that the official's conduct was unlawful in the situation the official confronted.  Prior case law must give the government official clear warning that the official's conduct is unlawful.  Hope v. Pelzer, 536 U.S. 730 (2002).

Here, it is undisputed that defendants Evans and Suver only worked on plaintiff's criminal case in their official capacities as Deputy District Attorneys for Marion County, Oregon. First Amended

Page 7 - OPINION AND ORDER

Complaint, ¶ 7; Defs. Evans and Suver's Memorandum at 3. Prior to obtaining a warrant to search plaintiff's home, and, in accordance with departmental policies, defendant Lathrop contacted the Marion County District Attorney's Office for advice regarding the legality of hash oil under the Oregon Medical Marijuana Act, and ultimately directed his questions towards Evans. Evans subsequently consulted Suver in her capacity as a Deputy District Attorney regarding Lathrop's inquiry. Suver advised Evans that, based on the plain language of the OMMA statutes and Oregon criminal code, hash oil was not authorized by the Act. Evans then advised Lathrop in accordance with Suver's advice. Plaintiff's allegations against Evans and Suver relate solely to Evans' advisement of Lathrop, and the communication between Evans and Suver, related to the criminality of hash oil.

Plaintiff alleges that defendants Evans and Suver violated plaintiff's Fourth Amendment right to be free from false arrest and imprisonment by "incorrectly advising the other individual defendants that there was probable cause to arrest plaintiff without an arrest warrant." First Amended Complaint, ¶ 34.

Because it is undisputed that Evans and Suver worked on plaintiff's criminal case in their official capacities as Deputy District Attorneys for Marion County, and because they advised Detective Lathrop in the preparation of an initial search warrant of plaintiff's house, I find that Evans and Suver undertook the

Page 8 - OPINION AND ORDER

police-like activity of acquiring evidence which might be used in prosecution, and are thus entitled to qualified immunity.

In considering the first step of the qualified immunity inquiry, this court must determine whether plaintiff's constitutional rights were violated. Plaintiff contends that Evans and Suver violated his Fourth Amendment right to be free from false arrest and imprisonment when they advised the other individual defendants that there was probable cause to arrest plaintiff for the manufacture of hash oil without an arrest warrant. I disagree.

Evans and Suver advised Lathrop on the legality of hash oil for the purposes of obtaining a search warrant, which was granted, and subsequently led to plaintiff's arrest. Plaintiff relies on Oregon state statutes as evidence that his right to possess and manufacture hash oil is "clearly established." The Ninth Circuit, however, recognizes that "[w]hether the [defendants] violated a state law or an internal departmental policy is not the focus of our [qualified immunity] inquiry." Case v. Kitsap County Sheriff's Dept., 249 F.3d 921, 929 (9th Cir. 2001) (citing Gagne v. City of Galveston, 805 F.2d 558, 560 (5th Cir. 1986) ("[A]llegations about the breach of a statute or regulation are simply irrelevant to the question of an official's eligibility for qualified immunity in a suit over the deprivation of a constitutional right.")). Rather, to determine whether an official is eligible for qualified immunity, the Ninth Circuit focuses on "whether a reasonable [official] would

Page 9 - OPINION AND ORDER

have known that the [defendants'] conduct violated [plaintiff's] *federal* statutory or constitutional rights rather than merely a state law or policy provision." Id. (emphasis added) (citing Davis v. Scherer, 468 U.S. 183, 194 (1984)); see also, Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) ("To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress.").

Plaintiff fails to provide any authority supporting a federal right to possess or access marijuana. In fact, there is no record of any court decision establishing a federal right to marijuana based on a state medical marijuana law; rather, courts have found no federal right to access or use marijuana in the context of state medical marijuana laws. See, e.g., Raich v. Gonzales, 500 F.3d 850, 866 (9th Cir. 2007) (no federal right to use medical marijuana under California's medical marijuana law: "[F]ederal law does not recognize a fundamental right to use medical marijuana prescribed by a licensed physician."). Moreover, Congress has classified marijuana as a schedule I controlled substance. See 21 U.S.C. § 812 Schedule I (c)(10). This classification prohibits, among other things, the possession of marijuana outside of approved research projects. See 21 U.S.C. §§ 812, 823(f), 829. Without authority indicating a change in federal constitutional or statutory law, I find no violation of plaintiff's Fourth Amendment rights.

Page 10 - OPINION AND ORDER

I find that Evans and Suver are entitled to qualified immunity, and therefore, defendants Evans' and Suver's motion for summary judgment is granted.

II. <u>Defendants Jeff Kuhns, Timothy Lathrop and John Troncoso</u>

A. False Arrest and Imprisonment

Plaintiff argues that the Officers violated plaintiff's Fourth Amendment right to be free from false arrest and imprisonment by arresting plaintiff without an arrest warrant, probable cause of a crime, or other constitutionally adequate provision. I disagree.

As an objective standard, probable cause to arrest without a warrant exists when the facts and circumstances known to the arresting officer at the time of the arrest are sufficient to lead a prudent person to believe the suspect has committed, is committing, or is about to commit a crime. <u>Allen v. City of Portland</u>, 73 F.3d 232, 237 (9th Cir. 1996). Probable cause does not require the same type of specific evidence of each element of an offense as would be needed to support a conviction; rather, "[i]n dealing with probable cause...we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." <u>Adams v. Williams</u>, 407 U.S. 143, 149 (1972)(internal citation omitted); <u>see also</u> <u>United States v. Buckner</u>, 179 F.3d 834, 837 (9th Cir. 1999) ("Probable cause exists

Page 11 - OPINION AND ORDER

when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime.").

Plaintiff argues that possession and manufacture of hash oil is legal under the guidelines of OMMA, and therefore the Officers did not have probable cause to arrest plaintiff. Because Oregon law does not explicitly provide for and is currently unclear as to the legality of hash oil, I will not rule on plaintiff's arguments at this time, noting that such a ruling is not necessary for the purposes of this motion.

The U.S. Supreme Court recognizes that "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." Virginia v. Moore, 553 U.S. 164, 176 (2008) (police did not violate the Fourth Amendment when they made an arrest that was based on probable cause but prohibited by state law). The Court further recognizes that while state laws "vary from place to place and from time to time, Fourth Amendment protections are not so variable and cannot be made to turn upon such trivialities." Id. at 172 (internal citations omitted). If Fourth Amendment analysis were to incorporate state law limitations, "the constitutional standard would be only as easy

Page 12 - OPINION AND ORDER

to apply as the underlying state law, and state law can be complicated indeed." Id. at 175.

Consequently, whether OMMA provides qualified persons an exception from state criminal charges or an affirmative defense is irrelevant in the context of plaintiff's civil rights action brought under 42 U.S.C. § 1983. See, e.g., Emerald Steel Fabricators, Inc. v. BOLI, 348 Or. 159, 178, 230 P.3d 518 (2010) ("To the extent that ORS 475.306(1) affirmatively authorizes the use of medical marijuana, federal law preempts that subsection, leaving it without effect.") (internal citations omitted). Instead, the analysis depends on federal law, which classifies marijuana as a schedule I controlled substance. See 21 U.S.C. § 812 Schedule I (c)(10). This classification prohibits, among other things, the possession of marijuana outside of approved research projects. See 21 U.S.C. §§ 812, 823(f), 829. Furthermore, the prohibition of marijuana exists regardless of medical needs. See, e.g., Raich v. Gonzales, 500 F.3d 850, 866 (9th Cir. 2007).

As such, I find that the Officers had probable cause to arrest plaintiff. Following the October 17, 2007, emergency phone call indicating the existence of pipe bombs in plaintiff's home, several officers at the scene learned and consequently reported to Lathrop that the alleged pipe bombs were actually devices used for the extraction of hash oil. After learning that plaintiff possessed and manufactured hash oil, Lathrop reviewed the Oregon laws concerning

Page 13 - OPINION AND ORDER

the unlawful manufacture and delivery of controlled substances within 1,000 feet of a school as well as OMMA. Lathrop also read a news article detailing the conviction of three individuals in California for the possession of hash oil. Unsure as to whether OMMA permits the possession of hash oil, Lathrop contacted the Marion County District Attorney's Office for legal advice. He informed Deputy District Attorney Evans of the relevant facts, including plaintiff's status as an OMMA cardholder. After consulting with another District Deputy Attorney, Evans informed Lathrop that the District Attorney's office had previously prosecuted individuals for possession and/or manufacturing hash oil, and would do so in this case. See Stevens v. Rose, 298 F.3d 880, 884 (9th Cir. 2002) ("While reliance on counsel's advice will not satisfy a defendant's burden of acting reasonably, it is evidence of...good faith.") (quoting Lucero v. Hart, 915 F.2d 1367, 1371 (9th Cir. 1990)).

Lathrop then outlined in his Affidavit for a Search Warrant all of the factors that caused him to believe a crime had been committed, which included his understanding of the manufacture of hash oil, a criminal background check detailing plaintiff's Robbery III conviction as well as several arrests in Oregon for the possession and delivery of controlled substances, including methamphetamine. Finally, upon a similar finding of probable cause, Judge Claudia Burton authorized Lathrop's search warrant and

Page 14 - OPINION AND ORDER

plaintiff was subsequently arrested. See <u>Spinelli v. United States</u>, 393 U.S. 410 (1969) (judicial officer must make an independent judgment that probable cause exists prior to issuing a search warrant), <u>abrogated on different grounds</u> by <u>Illinois v. Gates</u>, 462 U.S. 213 (1983).

Plaintiff further argues that the Grand Jury's decision not to bring criminal charges proves that the Officers lacked probable cause to make an arrest under the Fourth Amendment; however, the Grand Jury decision has no bearing on the constitutionality of an arrest. See <u>Pierson v. Ray</u>, 386 U.S. 547, 555 (1967). Moreover, the Fourth Amendment requires a standard of reasonableness, not certainty, and a sufficient probability that probable cause exists is the touchstone of reasonableness. <u>Hill v. California</u>, 401 U.S. 797, 804 (1971).

Because the facts involved in this case are undisputed, Lathrop researched and reviewed Oregon criminal statutes regarding controlled substances as well as OMMA, sought additional advice from the District Attorneys Office, and received authorization and approval from an independent judicial officer, I find that, as a matter of law, the circumstances were sufficient to lead a reasonable and prudent person to conclude plaintiff had committed, was committing, or was going to commit a crime. Thus, I grant defendants' motion for summary judgment regarding false arrest.

B. Illegal Search and Seizure

Plaintiff argues that the Officers violated his Fourth Amendment right to be free from illegal search and seizure by applying for a search warrant without proof of illegal conduct. Plaintiff specifically adopts his arguments concerning the Officers' alleged lack of probable cause to arrest plaintiff. Although defendant Officers mistook plaintiff's complaint to rely solely on the Officers' entry into plaintiff's home on October 17, 2007, and provided similar legal support, I find that the Officers, as previously discussed, had probable cause to obtain a search warrant.

Even if plaintiff could show that a genuine issue of material fact exists as to the existence of probable cause, the Officers are entitled to qualified immunity. As previously discussed, "[w]hether the [defendants] violated a state law or an internal departmental policy is not the focus of our [qualified immunity] inquiry." Case v. Kitsap County Sheriff's Dept., 249 F.3d 921, 929 (9th Cir. 2001) (citing Gagne v. City of Galveston, 805 F.2d 558, 560 (5th Cir. 1986)). Instead, the Ninth Circuit focuses on "whether a reasonable [official] would have known that the [defendants'] conduct violated [plaintiff's] *federal* statutory or constitutional rights rather than merely a state law or policy provision." Id. (emphasis added) (citing Davis v. Scherer, 468 U.S. 183, 194 (1984)). Plaintiff provides evidence of an allegedly established state right to

Page 16 - OPINION AND ORDER

possess hash oil, yet fails to provide evidence of a similar federal constitutional right. Therefore, the Officers are entitled to qualified immunity and plaintiff's claim fails.

## III. Defendant City of Keizer

Plaintiff asserts a claim for municipal liability against defendant City of Keizer, arguing that the City's policies led to the violation of plaintiff's rights. Plaintiff contends that the City had a custom, policy or practice of allowing its officers to illegally consider hash and hash oil to be outside the protections of OMMA, and arrest OMMA cardholders for possessing these marijuana derivatives. Plaintiff further contends that even if the City's policy and training was proper, the defendant Officers shared an erroneous belief that hash oil is not protected by OMMA. The City moves for summary judgment on plaintiff's Fourth Amendment claims. I find no evidence of a constitutional violation as required to impose municipal liability. Therefore, defendant City's motion for summary judgment is granted.

A Monell claim against the City can only arise "[w]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983." Monell, 436 U.S. at 694. In other words, a municipality is not liable under 42

Page 17 - OPINION AND ORDER

U.S.C. § 1983 for injuries inflicted solely by its employees or agents. To succeed on a Monell claim, the plaintiff must prove that: (1) he possessed a constitutional right of which he was deprived; (2) the municipality has a policy; (3) the policy amounts to a deliberate indifference to plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional violation. Mabe v. San Bernadino County Dept. of Public Social Services, 237 F.3d 1101, 1111 (9th Cir. 2001).

As previously discussed, plaintiff's Fourth Amendment claim rests solely on an alleged violation of Oregon State law, without reference to a federal constitutional violation. Because plaintiff's evidence lacks an essential element of a Monell claim, summary judgment is granted in favor of the City.

## Supplemental Jurisdiction Over Pendent State Law Claims

I need not consider plaintiff's remaining state law claims alleged against defendants as I decline to exercise supplemental jurisdiction over those remaining claims. Title 28 U.S.C. § 1367 provides the basis for supplemental jurisdiction:

Except as otherwise provided in subsection (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States

Page 18 - OPINION AND ORDER

Constitution.

Subsection (c) of 28 U.S.C. § 1367 provides the court with discretion to "decline to exercise" supplemental jurisdiction in various circumstances including when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

That is exactly the situation at bar. Here, defendants have filed a motion for summary judgment against plaintiff's federal claims, which the court has granted. Remaining, are state law claims against defendants. This court declines to exercise jurisdiction over any remaining state law claim. Therefore, this complaint is dismissed in its entirety and the state law claims are remanded to state court.

## CONCLUSION

Defendants City of Keizer, John Teague, Jeff Kuhns, Timothy Lathrop and John Troncoso's summary judgment motion (doc. 31) is granted regarding plaintiff's federal claims. Defendants Lori Evans and Katie Suver's summary judgment motion (doc. 51) is granted. Plaintiff's state claims are dismissed and remanded to state court. This case is dismissed and all pending motions are denied as moot.

///

///

Finally, plaintiff's request for oral argument is denied as unnecessary.

IT IS SO ORDERED.

Dated this _20th_ day of May 2011.


_____
Ann Aiken
United States District Judge